SCHAMPER, Respondent, vs. ULLRICH, Appellant.

*March 25—April 30, 1907.*

*Vendor and purchaser of land: Pleading: Election between causes of action: Continuance: Absence of party: New trial: Discretion.*

1. Under a complaint alleging fraud in a sale of land by defendant to plaintiff and also a subsequent agreement between the parties by which defendant took an option upon the land and was to pay plaintiff all that he got for it in excess of a certain sum and also agreed to return the amount paid by plaintiff on the purchase price, there was no error in allowing plaintiff to elect upon the trial to proceed upon the theory of a contract to pay the sums mentioned.

2. Refusal to continue a cause over the term because of the alleged sudden illness of defendant, and refusal thereafter to grant a new trial on the same ground, are *held*, upon the showing made by affidavits upon both sides, not to have been an abuse of discretion.

APPEAL from a judgment of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

This action was commenced December 11, 1905, to recover damages sustained by alleged false representations in a land deal between the parties, and also by a failure of the defendant to perform an alleged oral contract in respect to the deal. The lands were situated near Grand Rapids and Nekoosa in Wood county. The complaint is unique, and to the effect

that prior to April 1, 1905, both parties resided in Chicago; that the defendant had several valuable farms for sale near Grand Rapids, which he falsely represented to contain 15,000 inhabitants, whereas it only contained 6,000 inhabitants, and near Nekoosa, falsely represented to contain 2,500 inhabitants, whereas it only contained 1,000 inhabitants; that the defendant falsely and fraudulently represented the qualities of said farms as to fertility, timber, and buildings; that, relying upon such representations, the plaintiff selected one of said farms of 160 acres, a description of which the plaintiff could not give by reason of being a stranger in Wood county; that the plaintiff purchased said farm of the defendant for $1,200, but entered into no written contract therefor, signed no note or memorandum thereof, and took no possession thereof; that in payment therefor the plaintiff gave the defendant a mortgage on real estate he owned in Chicago, which mortgage the defendant immediately sold to an innocent party to defraud the plaintiff; that out of said sum the plaintiff received from the defendant $600 in personal property, and the balance of $600 was to apply on the purchase price of said farm; that the plaintiff shipped his household goods from Chicago to Nekoosa, which the defendant fraudulently and with intent to deceive removed to a different and much inferior farm several miles south of Nekoosa; that on complaint being made by the plaintiff the defendant took from him an option on the farm so selected and purchased by the plaintiff, and agreed to give to the plaintiff all he got for the land over and above $1,350, and to return to the plaintiff the $600 he so received on the mortgage given to him by the plaintiff on his real estate in Chicago; that thereafter the defendant sold the 160-acre farm so selected by the plaintiff for $1,500, but that the defendant refused to give to the plaintiff the $150 as so agreed and refused to repay to the plaintiff the $600 so fraudulently taken from the plaintiff.

The defendant answered and denied all false representa-

tions and all fraud and deceit, or that the plaintiff relied upon any such representation or statement, and admits or alleges that the defendant had farms for sale in Wood county; that the plaintiff claimed to be a good judge of farm lands; that he went to Nekoosa and looked over the several farms of the defendant before making any choice or purchase, and that the plaintiff made such selection and purchase after a full investigation and solely upon his own judgment; that the farm so 'selected had no buildings thereon and was so purchased for $1,200; that the plaintiff and defendant entered into a written contract and agreement for the farm described April 5, 1905; that at the time the plaintiff gave to the defendant a mortgage of $1,200 on the real estate owned by him in Chicago, which, pursuant to an understanding with the plaintiff, the defendant sold, and from the proceeds thereof he was to pay and did pay to the plaintiff $600 with which to buy personal property and pay expenses of moving from Chicago to Wood county, and the remaining $600 the defendant was to retain and apply as part of the purchase price of said farm, and the same was done accordingly; that the defendant opened the car containing the household goods, etc., of the plaintiff when it arrived at Nekoosa, and removed the same to the Boyd farm which had theretofore been leased for the purpose of moving thereon by the plaintiff; that the defendant admits that he took an option from the plaintiff to sell the farm so purchased by the plaintiff, and in case of making sale to have therefor all he received over and above $1,350, of which sum the plaintiff was to have $750, and the remaining $600 the defendant was to retain in payment of the $600 he had loaned to the plaintiff as mentioned.

The plaintiff being called as a witness, the defendant interposed a demurrer *ore tenus* to the complaint on the ground seemingly that a cause of action in tort had been joined with one on contract. The court overruled the demurrer *ore tenus,* and on the request of the respective counsel stated in effect

that, if the defendant was liable at all under the complaint,
it was upon contract and not in tort by reason of the option
of the defendant to sell the farm.   Thereupon the plaintiff
elected to proceed upon the theory of a contract to repay the
$600 and the $150.   Thereupon the defendant moved to con-
tinue the cause over the term, which was denied by the court.
The trial then proceeded, and at the close of the testimony
the court directed the jury to return a verdict in favor of the
plaintiff and assess his damages at $771.25, principal and in-
terest.   From the judgment entered upon that verdict accord-
ingly the defendant appeals.

D. D. Conway, attorney, and Daniel H. Grady, of counsel,
for the appellant.

For the respondent there was a brief by Goggins & Bra-
zeau, and oral argument by T. W. Brazeau.

Cassoday, C. J.   1. Upon objection to evidence under the
complaint the trial court seems to have been of the opinion
that if the defendant was liable to the plaintiff at all his liabil-
ity was founded upon the settlement of the wrongs previously
alleged in the complaint and the promise and agreement to re-
pay to the plaintiff the $600 he had realized and retained on
the mortgage and the $150 alleged to have been realized on
the sale of the farm, over and above the $1,350 therein men-
tioned.   However that may have been, we are clearly of the
opinion that there was no error in allowing the plaintiff to
elect upon the trial "to proceed upon the theory of a contract
to repay the $600 and the $150" mentioned.

2. Nor do we think there was any error in refusing to con-
tinue the cause when called for trial May 31, 1906.   That
application was based upon a letter from the defendant to his
counsel dated at Chicago May 30, 1906, announcing that he
was unable to be present at the trial by reason of sudden ill-
ness, and a certificate, purporting to be from a physician in
Chicago, to the same effect, neither of which was verified.

After verdict was so directed May 31, 1906, and on August 16, 1906, the defendant obtained an order to show cause why the verdict should not be set aside and a new trial granted by reason of such alleged error in so refusing to continue the cause May 31, 1906, which order to show cause was based upon the pleadings, papers, records, files, and the affidavits of the defendant and his attorney and physician. From the affidavit of the attorney it appears, among other things, that May 26, 1906, the defendant informed him that he was very sick and would be unable to be present at the trial, if reached within two or three weeks from that date. The plaintiff's attorneys then consented that the cause might go to the foot of the jury calendar, which would not be later than June 2, 1906, and May 29, 1906, the defendant was notified accordingly by his attorney and told that the cause would be reached and called for trial on the morning of May 31, 1906. On the day last named the attorney received a letter from the defendant to the effect that he started to come to Grand Rapids, but was overcome by sickness when he reached the Union Depot and so was obliged to return; and he informed the court of the facts stated and that he could not safely proceed to the trial of the action without the testimony of the defendant. From the physician's affidavit it appears that in May and June, 1906, he was a regularly licensed physician, practicing as such in Chicago, and had for years been the family physician of the defendant; that on May 24, 26, and 28, 1906, the defendant called at his office for treatment; that on examination, and the history of the case and symptoms present, the defendant was suffering from dizziness and affection of the nervous system, and that his condition was such as to make it necessary for the defendant to remain quiet and avoid all forms of excitement and nervous strain, and so he advised the defendant to remain at home and take perfect rest for twenty days, and to avoid outdoor heat and riding on cars, and that such contemplated trip would be dangerous.

From the defendant's affidavit it appears that on May 23, 1906, while traveling in Juneau county, Wisconsin, he was taken ill with dizziness and darting pains in his head and a high fever and so returned home and consulted his physician, who advised him as stated and that he should not attend to business of any kind more than one hour a day and that in the forenoon; that contrary to such advice he started for Grand Rapids May 30, 1906, but at the depot he was taken ill as stated, and so found it necessary to return home. The affidavit restates the negotiations in some respects differently than alleged in the answer, and embodies a formal affidavit of merits, and then reiterates the optional agreement mentioned in the complaint and answer, whereby the defendant was to sell the farm and have all it brought over and above $1,350; that the defendant thereafter found a person who agreed to pay $1,500 and paid thereon $150, and agreed to pay $750 in thirty days and to assume the $600 due on the plaintiff's contract; that such prospective purchaser failed to raise the $750 and so the agreement was canceled.

In answer to such order to show cause, four affidavits on behalf of the plaintiff were presented to the court, from which it appears that the defendant was in his office on the eleventh floor of the Ashland Block in Chicago between 11 and 12 o'clock a. m. May 31, 1906; that he engaged in an extended conversation about another suit pending against him in Wood county; that he walked from his office to the elevator, a distance of about sixty feet, and appeared to be "perfectly competent and able physically and mentally to attend to his business affairs." Another of the affiants had an interview with the physician mentioned August 28, 1906, and the doctor told him that the defendant called on him May 30 or May 31, 1906, and said he was not feeling well; that he was suffering from nervousness; that he appeared to be in perfect health physically; that the defendant then asked the doctor to make an affidavit as to his physical condition, which he did; that

the statements contained in the affidavit were made solely upon the statements made by the defendant to him on the day named; that unless physical imperfections or ailments are apparent to the eye, then any statement or affidavit in respect to them must of necessity be based solely upon statements made by the person so affected, as in this case. Another of the affiants testified that he was an attorney at law residing in Nekoosa, Wood county; that on May 29, 1906, on returning from St. Louis, Missouri, he stopped in Chicago and called on the defendant at his office in the Ashland Block, with whom he was well acquainted by reason of his extensive real-estate business in and about Nekoosa; that he went into the defendant's office about 11 o'clock a. m. of the day named; that he remained there until noon visiting with the defendant; that he saw the defendant again in the office of the Chicago, Milwaukee & St. Paul Railway Company about 3 o'clock of that day and again at the theater on the evening of that day; that he looked as he usually did, but said he was sick and not attending to business, and that he could not be present at the trial of this action and had sent to his attorney a certificate of his physician to that effect. Upon such showing and the records and files in the case the trial court refused to set aside the verdict and grant a new trial.

The continuance of a cause for the absence of a witness is a matter addressed to the sound discretion of the trial court. *Hayes v. Frey,* 54 Wis. 503, 11 N. W. 695; *Hill v. Fond du Lac,* 56 Wis. 242, 14 N. W. 25; *Allis v. Meadow Spring. D. Co.* 67 Wis. 16, 29 N. W. 543, 30 N. W. 300; *McMahon v. Snyder,* 117 Wis. 463, 94 N. W. 351. Where, as here, the absent witness is a party to the action, good cause should certainly be shown before a continuance should be granted on account of such absence; and especially is this true where, as here, it is sought to set aside the verdict and grant a new trial. The defendant had nearly five months to prepare for trial. If for any cause there was apprehension that he might not be able to attend the trial, his deposition could have been taken.

Manifestly, the confidence which the trial court otherwise might have had in the affidavits of the defendant and his physician may have been, and undoubtedly was, badly shaken by the affidavits presented on behalf of the plaintiff. We cannot say that there was any abuse of discretion in the ruling mentioned.

The optional agreement alleged in the complaint is expressly admitted in the answer to the effect "that in case of sale" by the defendant of the farm "for $1,350 or more the plaintiff was to have $750 and the remaining $600 was to go to the defendant for payment of money loaned to the plaintiff." The complaint also alleged that the defendant had thereafter sold the farm for $1,500. There is no denial of that allegation in the answer unless it be by the general denial of what was not therein specially admitted, qualified, or explained. On the trial the plaintiff testified that the defendant told him in September, 1905, that he had sold the farm for $1,500, and repeated the same two weeks before the trial. Such admissions of having sold the farm were not disputed on the trial. In the defendant's affidavit mentioned he admitted that he found a person who agreed to purchase the land for $1,500, and who paid him thereon $150 and agreed to pay the balance as above stated. The plaintiff never received any conveyance of the farm and never occupied the same. Thus it is undisputed that at the time of the trial the defendant had received the $600 realized on the mortgage for which the plaintiff had received nothing, and which amount, together with the $150 mentioned, he promised and agreed before suit to pay to the plaintiff in settlement of the controversy. By reason of such promise and agreement and the undisputed evidence the verdict was directed in favor of the plaintiff as mentioned. There are no other questions calling for consideration.

*By the Court.*—The judgment of the circuit court is affirmed.